IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| **MICHAEL JAMES HAYWARD**, | ) | 3:13-cv-1792-SI |
| | ) | |
| Petitioner, | ) | **OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| **JEFF PREMO**, Superintendent, | ) | |
| Oregon State Penitentiary, | ) | |
| | ) | |
| Respondent. | ) | |

C. Renee Manes and Oliver W. Loewy, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, 101 SW Main Street, Suite 1700, Portland, OR 97204. Of Attorneys for Petitioner.

Ellen F. Rosenblum, Attorney General, Erin K. Galli, Samuel A. Kubernick, and Timothy A. Sylwester, Assistant Attorney General, DEPARTMENT OF JUSTICE, 1162 Court Street NE, Salem, OR 97301. Of Attorneys for Respondent.

**Michael H. Simon, District Judge.**

Petitioner moves the Court pursuant to *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005), to stay this federal death penalty habeas action and hold it in abeyance while he returns to state court to raise and exhaust constitutional claims arising out of the Oregon Legislature's passage of SB 1013 and other newly developed law and research.[1] Among other claims, Petitioner seeks to

---

[1] SB 1013 narrows the set of circumstances that meet the definition of aggravated murder, the only crime punishable by death in Oregon. Although Petitioner's crime would not qualify as aggravated murder under the new law, the legislature explicitly provided that the law does not

exhaust in state court a claim alleging that because his crimes of conviction are no longer subject to the death penalty in Oregon, his death sentence now violates his constitutional rights under the Eighth Amendment to be free from cruel and unusual punishment and a claim alleging that the determination by the legislative and executive branches to remove the future dangerousness question constitutes an admission of the constitutional infirmities of Oregon's prior capital sentencing scheme. Respondent opposes Petitioner's motion on the basis that his proposed claims would either be procedurally barred in state court or are plainly meritless.

Petitioner timely filed his initial Petition in this federal case on September 25, 2014. Thereafter, in accordance with the Court's scheduling order, the parties began briefing issues of exhaustion and procedural default. In an Opinion and Order dated July 25, 2016, however, the Court granted Petitioner's earlier motion to stay this action in order to exhaust certain claims in a successive post-conviction petition. The Court lifted that stay in June 2017, and the parties resumed briefing issues of exhaustion and procedural default.

Although Petitioner seeks a stay pursuant to *Rhines*, because he has not moved to add new claims allegedly arising out of the passage of SB 1013 to the Petition, the petition at issue is not a mixed one containing exhausted and unexhausted claims.[2] Accordingly, should the Court

---

apply retroactively. In addition, SB 1013 removed the "future dangerousness" penalty-phase question from jury consideration.

[2] As noted above, the Court has yet to rule on issues of exhaustion and procedural default raised concerning the Petition, but those present different types of exhaustion issues. Specifically, the Court has not answered: (1) whether Petitioner failed to fairly present any of the current claims in the Petition to the Oregon courts in a procedural context in which their merits would be considered—in which case they would be "technically exhausted," but procedurally defaulted; and (2) whether Petitioner can demonstrate entitlement to excuse any procedural default of those claims. *See Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) ("Smith needs no excuse from the exhaustion requirement because he has technically exhausted his state remedies through his procedural default. The Supreme Court has noted that '[a] habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer "available" to him.' *Coleman v.*

exercise its discretion to grant a stay in this matter, it must do so pursuant to the procedure described in *Kelly v. Small*, 315 F.3d 1063 (2003) (*overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007). "The two approaches [set out in *Rhines* and *Kelly*] are distinct: *Rhines* applies to *mixed* petitions, whereas the three-step *Kelly* procedure applies to stays of *fully exhausted* petitions." *Jackson v. Roe*, 425 F.3d 654, 661 (9th Cir. 2005) (emphasis in original).

The *Kelly* approach proceeds as follows: (1) a petitioner amends his petition to delete any unexhausted claims; (2) the Court stays and holds in abeyance the amended, fully-exhausted petition, allowing petitioner the opportunity to proceed to state court to exhaust his deleted claims; and (3) the petitioner later amends his petition and reattaches the newly-exhausted claims in the original petition. *King v. Ryan*, 564 F.3d 1133, 1135 (9th Cir. 2009) (citing *Kelly*, 315 F.3d at 1070-71); *see also Mitchell v. Valenzuela*, 791 F.3d 1166, 1171 n.4 (9th Cir. 2015) (*Kelly* procedure remains in place post-*Rhines*). In contrast to a *Rhines* stay, the *Kelly* procedure does not require a petitioner to demonstrate good cause for failing to exhaust claims in state court. *Id.*[3]

---

*Thompson*, 501 U.S. 722, 732 (1991). In cases such as this, where a petitioner did not properly exhaust state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would not find the claims procedurally barred,' the petitioner's claim is procedurally defaulted. *Id.* at 735 n. 1. In light of the procedural bar to Smith returning to state court to exhaust his state remedies properly, the relevant question becomes whether Smith's procedural default can be excused, not whether Smith's failure to exhaust can be excused.").

[3] Petitioner suggests that *Fetterly v. Paskett*, 997 F.2d 1295 (9th Cir. 1993), and *Nowaczyk v. Warden*, 299 F.3d 69, 79 (1st Cir. 2002), support his contention that he has met the requirements of *Rhines*. Although these cases confirm that a district court acts within its discretion when it stays a fully exhausted petition pending resolution of an unexhausted claim in state court, they do not suggest that a *Rhines* stay, as opposed to a *Kelly* stay, is the appropriate course in a case like this.

Petitioner should be aware, however, that under the *Kelly* procedure, he may be precluded from adding any newly-exhausted claim if the claim is either untimely or not sufficiently related to his current claims. *See* 28 U.S.C. § 2244(d); *King*, 564 F.3d at 1140-41. Although a federal habeas petitioner may seek to amend a timely-filed petition with new claims after the expiration of the statute of limitations provided in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), any such claims must otherwise be timely, as well as "relate back" to timely claims in the petition. *Mayle v. Felix*, 545 U.S. 644, 662 (2005) ("An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.").

The Court recognizes that Petitioner is *not* beginning with a mixed petition, as presently there are no unexhausted claims to dismiss. As such, he is in the same procedural position as a petitioner who had already undertaken the first step of the *Kelly* procedure. Thus, the instant motion is now amenable to a stay-and-abeyance pursuant to *Kelly* to allow Petitioner to attempt to exhaust his additional claim in the state courts and then seek leave to amend his federal petition upon his return to this Court.

A *Kelly* stay is appropriate here. To the extent that at least one of Petitioner's proposed claims arises out of the passage of SB 1013, its new provisions went into effect on September 29, 2019. Accordingly, Petitioner could not have raised such a claim any earlier in state court.

In addition, Petitioner indicates that his constitutional claims will be largely premised on the Eighth Amendment:

> He anticipates raising at least three claims for relief: that the capital statutory scheme used at his trial is unconstitutional under the requirements of *Furman* and it's progeny; that the capital statutory scheme used at his trial [ ] fails to meet the heightened

> standard of reliability for capital cases required by the Eighth
> Amendment and applicable Supreme Court authority; and that it
> constitutes Cruel and Unusual punishment in violation of the
> Eighth Amendment to subject him to death under the evolving
> standards of decency, particularly as evidenced by Oregon's
> statutory revisions.

ECF 117 at 5-6.

Petitioner further cites *State v. Santiago*, 318 Conn. 1 (2015), in which the Connecticut Supreme Court considered a similar issue after that state passed non-retroactive legislation abolishing the death penalty. Ultimately, Connecticut's high court determined that under the state constitution, its death penalty no longer comported with contemporary standards of decency and no longer served any penological purpose. *Id*. at 86-87. The Connecticut Supreme Court concluded that the execution of offenders who committed their crimes before the legislation's effective date would violate the state constitution's prohibition against cruel and unusual punishment. *Id*. at 86. In addition, Petitioner suggests this outcome is consistent with his contention that "[t]here is no evidence of any state ever having executed a prisoner while having in place a death-penalty repeal—be it a current repeal, a now past period repeal, judicial repeal, or partial repeal (in which execution is barred for certain crimes and not others)." ECF 117 at 8.

Respondent contends that Petitioner's proposed claim alleging that the future dangerousness question violates the United States Constitution because it is constitutionally, rationally, and scientifically infirm and fails to meet the "heightened reliability" requirement of the Eighth Amendment does not depend on the passage of SB 1013, and does not fall within either of Oregon's escape clauses for filing late or successive post-conviction petitions.

With regard to *Santiago* and any parallel the Court might draw between that decision and Petitioner's claim that his sentence violates evolving standards of decency because his crimes of conviction would no longer qualify for the death penalty, Respondent argues that *Santiago* was

decided strictly on state constitutional grounds, and, in any case, involved complete abolishment of the death penalty. Moreover, Respondent contends and that "'no [United States] Supreme Court decision holds that the failure of a state legislature to make revisions in a capital sentencing statute retroactively applicable to all of those who have been sentenced to death before the effective date of the new statute violates' the Constitution." ECF 119 at 8-9 (quoting *Lambrix v. Secretary, DOC*, 872 F.3d 1170, 1183 (11th Cir. 2017)). In addition, Respondent argues that this claim lacks merit because whatever the passage of SB 1013 might say about evolving standards of decency in Oregon, it says little about the standards in the nation as a whole, which is the concern of the Eighth Amendment.

These arguments notwithstanding, Respondent does not suggest that the claim at issue is frivolous, or that the Oregon courts will refuse to address its merits. To the contrary, the parties' references to *Santiago* and *Lambrix* buttress the conclusion that there is a reasonable chance that the Oregon courts *will* examine Petitioner's claim on the merits, just as the Connecticut and Florida courts did in the previously mentioned cases. The Court need not, however, predict whether Petitioner will prevail on the merits of this or any other claim in state court.

Finally, Petitioner's indication that he will file a successive post-conviction petition in state court raises the question as to whether this Court may continue adjudicating his federal habeas Petition while the Oregon courts address his new unexhausted claims. Although the question is not settled in the Ninth Circuit, existing authority suggests that such parallel litigation is disfavored, if not completely prohibited. *Sherwood v. Tompkins*, 716 F.2d 632, 634 (9th Cir. 1983) (federal petitioner must await the exhaustion of all of his state-court challenges, even where the single issue to be challenged in a federal habeas action has already been settled by the state courts, because other state-court challenges may result in the relief sought by petitioner);

*see also Edelbacher v. Calderon*, 160 F.3d 582, 587 (9th Cir. 1998) ("[O]ur federal judiciary, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." (quoting *Younger v. Harris*, 401 U.S. 37, 44 (1971))).

To this end, considerations of comity and judicial efficiency favor allowing Petitioner to stay this proceeding until the Oregon state courts have been afforded the initial opportunity to consider the constitutional questions raised by the passage of SB 1013. Respondent asks that the Court limit the scope of any stay to allow Petitioner to pursue only his claim that his sentence violates evolving standards of decency under the Eighth and Fourteenth Amendments because his crime of conviction would no longer qualify for the death penalty in Oregon. The Court notes Respondent's concern that allowing Petitioner to raise additional claims that Respondent insists are untethered from SB 1013 and that do not satisfy the escape clauses for filing a late or successive post-conviction petition will unduly delay this matter. Beyond determining that there is a reasonable chance that the Oregon courts will address the merits of at least one constitutional claim, however, the Court declines to opine regarding which proposed claims are related to SB 1013 or otherwise parse what claims the Oregon courts are likely to examine on the merits. The Court trusts that if certain claims so clearly fail satisfy one of the escape clauses as Respondent contends, the Oregon courts can efficiently resolve them on procedural grounds. The Court also is cognizant of the substantial public resources that proceeding with parallel state and federal post-conviction litigation—assuming such action is permissible—would involve. For these reasons, the Court concludes that the stay-and-abeyance procedure set out in *Kelly* is appropriate and prudent at this time.

The Court concludes that there is a reasonable likelihood that the Oregon courts will address the merits of at least one constitutional claim raised by Petitioner in post-conviction proceedings. Accordingly, a stay of this federal habeas proceedings is appropriate, and the Court GRANTS petitioner's Motion to Stay (ECF 117). This action is STAYED during the pendency of Petitioner's state post-conviction proceedings. Petitioner shall file his state court petition within 90 days of the date of this Opinion and Order and must move to lift this stay within 60 days of the completion of the state court proceedings.

**IT IS SO ORDERED.**

DATED this 7th day of February, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge